Good morning. May it please the Court. My name is Jeffrey Martins, and I represent the petitioner Mr. Shisha Singh. I would like to reserve two minutes of my time, if necessary, for any rebuttal. When the Border Patrol apprehends an individual on the border, it's a normal part of their routine to ask for the individual's name. And because the large majority of the people who are apprehended are Mexicans, they normally will ask for a maternal name also, because it's a custom of Mexicans to use both paternal and maternal name as their family name. So when Mr. Singh was apprehended on the border, he had dark skin and dark hair, and the Border Patrol asked him for his name, and he replied Shisha Singh. And then they asked for his mother's name or his maternal name, and he replied Balwinder Kour, although he does not use his mother's name, and it's not the practice of Indians to use their mother's names. Nevertheless, the Border Patrol appended that name to the end of his name, and he became Shisha Singh Balwinder Kour, even though he explained what happened at the border to the judge and explained that his full and complete name is really Shisha Singh, and all the evidence in the record indicates that his name is Shisha Singh. Now, the entry of his name into the U.S. immigration computer system as Shisha Singh Balwinder Kour was an error by the Border Patrol. It was probably just caused by simply inattention, maybe ignorance. The Border Patrol also misspelled his mother's name, which is K-A-U-R, not K-O-U-R, and the failure of the judge to correct that was a simple oversight. There is one point where she kind of recognizes that that error was made, and the error has been continued to be perpetuated throughout the appeal process. Now, that such an error could occur in the United States, one of the most sophisticated and developed countries in the world, is understandable when you just consider the simple fallibility of the individuals working in the system. You compare that error to the error that the judge rejected in Mr. Singh's Indian driver's license. The Indian driver's license was, of course, India is not as newly developed or modern as the United States. The driver's license was prepared using a manual typewriter. Some of the entries are handwritten. It was prepared in an area of India where they speak Punjabi as the predominant language. It has a completely different alphabet from the English language. So the fact that the clerk who prepared this driver's license might have dropped a letter is also completely understandable. It's hardly surprising. You're making a lot of reasons why the I.J. was wrong, but the I.J. didn't have to agree with anything that you've said so far. I'm sorry, the judge? The I.J. doesn't have to agree with anything that you've said so far. It doesn't have to agree that it was a manual typewriter and that it was a mistake because they're a so-called backward country, which certainly hasn't been demonstrated. And maybe some of us have been to India and have found parts of India that are not backward. So there's a lot of speculation going on here. But why did the I.J. abuse discretion in making the determinations that the I.J. made? Well, I think comparing the two kinds of errors is important because it kind of demonstrates the unreasonableness of the judge's decision. And it's important in this case because Mr. Singh came to the court with identity documents, his driver's license and a copy of his passport. And part of the reason why the judge denied his application and the board affirmed it is because he didn't corroborate his identity. And the identity that he brought to the court was rejected because of those trivial kind of errors. Well, it was hardly trivial. It was misspelled. It had the different village. I mean, there was the I.J. said, I don't know who this is. The identity isn't clear based on this driver's license. The passport, I guess, was just a part of this, a photocopy of part of one. And our job is to see whether there was substantial evidence supporting the I.J.'s determination that he was not sure of the person's, the petitioner's identity. If that's the only evidence in the record, I mean, how can we say we're compelled to conclude there was sufficient evidence of his identity? Well, Your Honor, I think that what this case really comes down to is whether or not there was sufficient notice to Mr. Singh, whether or not the driver's license and the passport would not be accepted. Because he's a young adult, he didn't have very much identity documentation. And when he went to the court, the judge didn't indicate that she was going to reject the driver's license or not accept the passport copy. So he had no way of knowing at that point in time that he needed to get additional cooperation and supply more evidence to the court. Now, because this is a Real ID Act case, I think this case is governed by the court's decision in Ren v. Holder, which was a case that was brought to the attention by the government's 28J letter. And it covers these issues of the necessity of notice for cooperating documents. And the court there ruled that the plain language of the statute requires that an alien be given notice of the need for cooperating documents. I was concerned about whether we had jurisdiction to hear that issue because the brief to the BIA didn't raise that. I believe that it did raise all those issues, Your Honor. It didn't raise the issue of lack of notice of cooperation, right? Because it did raise the issue of cooperation and whether or not the judge was correct to have required additional cooperating documents. Okay. I didn't see that in your brief to the BIA. So maybe you can flag that for me. Well, if I could, Your Honor, I'd like to flag that during my rebuttal time. All right. Because I'd have to pick out the exact point in the brief where the issue was raised. It is clear, though, that Mr. Singh, until the judge made the decision, had no way of knowing exactly what the judge was going to require. That's the only point at which time Mr. Singh or his attorney knew that identity was going to be a problem. I guess I don't understand that really. I mean, if you go in, it's a civil case. You're going in, you're requesting relief, and you have to be able to inform the officials as to who you are. And if your driver's license is your form of identity and it's mistaken throughout, isn't it reasonable to, and you have the burden of proof, isn't it reasonable to have more information about your identity to show that, to carry your burden? Yes, and Mr. Singh also provided a copy of his passport. But I think because the errors are very small, it's a drop in one letter of his name and a slight misspelling of the name from, you know, when it's being transcribed from one language to another, that he didn't have, I think, a valid expectation that it would have been rejected. Particularly if you compare it to the errors that the Border Patrol made. Those errors, I think, are arguably worse because they added a whole second name onto his name and misspelled it in addition to that. So having a driver's license that has, you know, a letter missing isn't, I think, doesn't raise in Mr. Singh a valid expectation of that driver's license to be rejected. Well, what about the signature on the lack of signature issue that's raised? On the driver's license? Yes. Yeah. Well, again, I think that goes to the production of driver's licenses in India and exactly how they are produced. But, you see, we don't have any evidence that the IJ has never, perhaps, been to India. But just looking at it, it doesn't look like the type of document that doesn't even have a signature on it. Anybody could have typed it up. I'm just wondering, when Mr. Singh came in, he knew he had, he should have known he had the burden of proof of identity. And looking at those documents, they have a lot of questions. And if he had anything else, it seems to me a reasonable person would have presented it. With that, how can we say that the IJ didn't, there isn't substantial evidence here to support the IJ? Well, I think Mr. Singh presented what documents he did have. I mean, he's in a bit of a catch-22. If he doesn't present any identity documents, then the judge would certainly have denied it. Precisely. And we require that. And if they don't, then they don't get in. Right. There's no free passes because you just don't happen to have documents. If he doesn't debate his burden of proof, he goes back. Right. Because there's a requirement of corroborating documents. But he did provide corroborating documents. Yes. But if they're that questionable, we have to say that. Well, I don't agree that they are that questionable, I think. I see. All right. The errors are minor. I think they, in comparison to the errors that the U.S. Government made, are even less so. Do you want to retain your remaining seconds? Yeah, we're getting to the end there. Yes. Thank you. All right. We'll hear from the government. Good morning, Your Honors. I am Blair O'Connor on behalf of the Attorney General. Petitioner sought asylum in the United States based on alleged persecution in India on account of his political associations. The only evidence submitted in support of his application was his testimony and a handful of documentary evidence, including a flawed Indian driver's license. Because Petitioner was placed on notice of the problem with his driver's license and the need for corroborating evidence to establish his identity, evidence which he failed to submit, the record does not compel the conclusion that Petitioner sufficiently established his identity. Accordingly, the agency's decision should be upheld, and this petition for review should be denied. At the outset, it is important to note that fundamental to any asylum claim is the issue of identity, Your Honors, that the applicant is who he says he is. As the Board of Immigration Appeals has noted, an asylum applicant's identity is perhaps the most critical of elements of any asylum claim, and this is a sentiment that has been echoed by this Court in the Farra V. Oshkroft decision. If corroborating evidence was reasonably available to establish the critical element of Petitioner's identity, then under the Real ID Act, it was his burden to present this evidence, even if he was deemed to be credible by the agency. Now the only document that was admitted into evidence to establish Petitioner's identity was the Indian driver's license, and this document was riddled with errors. It had his name spelled both in the front and back of the license in the only place where his name appears, and it had him living in different villages on both the front and back of the document. What about the argument that the IJ should have told the Petitioner that the Well, Your Honor, first of all, we would agree that this issue, as we said in our brief, this issue was not exhausted. The alien's brief to the Board solely challenged the IJ's, what he deemed to be an adverse credibility finding, and then it also challenged the alternative finding that even assuming credible, he didn't establish past persecution. The brief at no point did it raise this issue of the what are the cooperation rules that has, you know, this Court has been deciding in its cases and ran, and currently is pending before the outbound court in Eschuti. So this issue was not exhausted. Therefore, the Court lacks jurisdiction to review that. But even putting exhaustion, failure to exhaust aside, here we would say that the agency did implicitly follow the three-step process that this Court set forth and ran. The IJ, when he was looking at the driver's license, he noted, and the alien agreed, that there were numerous errors with that license. Significantly, when the IJ questioned the alien about how he obtained the license, the Petitioner said that he personally went with his uncle to the agency in his village to pick up this driver's license. Therefore, it was entirely reasonable for him to review that license, to see that there were numerous errors with it, and to ask to have a correct license issued to him, because he was the one who personally picked it up. But in any event, the immigration judge notified him that there were lots of problems with the identity document that he submitted, and he asked him, isn't it reasonable, Petitioner, for you to obtain a correct identification document from the Indian Consulate? And the Petitioner agreed that he could obtain a passport, yet at no point did his attorney ask for continuance before the immigration judge to submit a proper and correct identification document. And we would also note that Is it your position that that's enough under Wren, under the We would, it is our position, Your Honor. But if the Court were to have concerns about that, and were to find that this issue has been properly exhausted as before it, then we would probably ask the Court to hold this case for the en banc decision in a shoddy, because it's, the Court is currently debating whether or not that procedure set forth in Wren was dicto or whether it will be binding. But we would say that here our initial argument is that the IJ did follow, you know, if not directly, indirectly, the procedures set forth by the Court, by the panel in Wren. And you said earlier he was on notice. You mean during the course of the hearing? Yes, Your Honor. It was the hearing. And it was the same hearing where the IJ did issue his decision. But, Your Honor, we would note that there was a problem with the initial appeal to the board when the board received it. And that resulted in the alien filing a motion to reopen before the IJ four and a half months after the IJ's original decision. And if during that time he could have at any point obtained a proper identification document and attached it as new evidence to the motion before the IJ and had the IJ consider that, and he failed to do so. So he did have, again, if not directly, indirectly, the notice and the opportunity to provide the evidence that's set forth by the panel in Wren in this case. Was he represented during these proceedings? Yes, Your Honor. He was. Not by the present counsel, but he was represented. With respect to the name on the notice to appear, we would respectfully disagree with the assertion that this was an error made by the Border Patrol agents. We find the alien's testimony in this regard simply implausible. He testified before the immigration judge that Spanish-speaking detainees, aliens that he was detained with, told him that, well, you put your mother's name and father's name, you combine the two when you list your name. But the alien's testimony on the record was that I told the Border Patrol agents that that was not the case. I told them my name was Shisha Singh and that was it. But yet, according to him, they simply ignored him and put the name that they wanted to put on the notice to appear. We would say that that's simply not plausible. That's not worthy of belief that Border Patrol agents do their jobs correctly and they put the names that the aliens tell them on the notice to appear. But that is not the name that appears in this notice to appear. We would say the proper assumption is that that's the name he gave the Border Patrol agents. And that was the full name that he signed on the notice to appear. He signed the full name, Shisha Singh Balwinder Kaur, on the notice to appear. And that's why that's the name that has appeared throughout the agency's throughout this case. So we would take issue that the record is by no means clear that this was a mistake by the Border Patrol agents. We would say the most reasonable assumption is that that was the name the alien gave the Border Patrol agents based on his communications with, you know, the people he was detained with and that, you know, he did not try to correct it before the Border Patrol agents. And that's really all the points I have to make. Unless the Court has any further questions, Your Honor, we'll rest in our briefs. Okay. Thank you. Thank you. Your Honor, I would refer the Court to administrative record, page 27. It's the petition to the Board of Immigration Appeals for the appeal. And I think we have a case in the record where the previous counsel said that the IJ abused his discretion to failing to properly analyze testimonial and documentary evidence in the record. Previous case law has indicated that the issues raised on appeal at the Board of Immigration should be construed liberally. And so I'd ask the Court to consider that that issue had been raised properly before the Board. I do have some other points. Is there anything else in it pertaining to this failure to give warning? Not in the previous counsel's brief to the Board, just in the notice of appeal. And that's all there was. This is as close as it gets to that. Yes, Your Honor. The judge did raise several issues in her denial of the application. The Board is the one that only affirmed based on the lack of cooperation of identity. Thank you. Thank you. All right. The case of Singh-Cower is submitted.
judges: Garbis, Wallace, Ikuta